**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**January 30, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RENE ROBERTO GONZALEZ-
DOMINGUEZ,

    Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,

    Respondent.

No. 23-9518
(Petition for Review)

_____

### ORDER AND JUDGMENT[*]
_____

Before **EID**, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

Rene Roberto Gonzalez-Dominguez is a native and citizen of El Salvador who

entered the United States without permission.  An immigration judge (IJ) found him

removable and ineligible for withholding of removal or protection under the

Convention Against Torture (CAT), and ordered that he be returned to his home

country.  The Board of Immigration Appeals (BIA) dismissed his appeal in a

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

single-member summary order.  Mr. Gonzalez-Dominguez now petitions for review of the BIA's decision.  We have jurisdiction under 8 U.S.C. § 1252(a), and we deny the petition.

## I.     STANDARD OF REVIEW

We review the BIA's decision, but we may consult the IJ's more-complete discussion of the same grounds relied upon by the BIA.  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).  We review the agency's "legal determinations de novo, and its findings of fact under a substantial-evidence standard."  *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005).  "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

## II.    BACKGROUND & PROCEDURAL HISTORY

Mr. Gonzalez-Dominguez entered the United States in April 2005.  In May 2011, the government served him with a notice to appear (NTA), charging him with removability as a noncitizen present in the United States without being admitted or paroled.  At a hearing before an IJ in August 2012, he conceded proper service of the NTA and removability as charged.  He then applied for withholding of removal and CAT protection,[1] claiming he would likely be killed by Salvadoran gangs upon return to his country because he used to belong to the Salvadoran national police force.

---

[1] He has not pursued an asylum claim.

### A.    Mr. Gonzalez-Dominguez's Hearing Testimony

At a hearing in support of withholding and CAT protection, Mr. Gonzalez-Dominguez testified he became a Salvadoran national police officer in 1995.  In August 2004, three Mara 18 gang members told him he needed to leave the police force or there might be attempts on the life of his wife and son.  He reported that threat to his superiors and was told "to be careful and keep an eye on the people that were around [him]."  R. at 174.  His superiors did not begin an investigation, however, because, according to Mr. Gonzalez-Dominguez, "in my country there aren't the resources in order to be able to do that."  *Id.*

Continuing his testimony, Mr. Gonzalez-Dominguez said five or six armed gang members came to his home the following month and asked why he had not left the police force, again threatening his wife and son.  He again reported the incident to his superiors, but "[t]his time they just didn't say anything," and they didn't investigate because, "like I said before, they can't—they can't do anything, can't do much, nothing."  R. at 176.

Mr. Gonzalez-Dominguez then testified that two or three gang members came to his house a month later (October 2004) and repeated their threat that he needed to quit the police force.  In December 2004, he received a similar threat while he was with his son at a nearby park.  He received five more threats in January and February 2005.  Finally, in March 2005, two people whom Mr. Gonzalez-Dominguez believed to be leaders of the Mara 18 gang came to his house and more forcefully threatened

the lives of his wife and son if he did not leave the police force. This threat struck him as more serious, and that is when he fled El Salvador for the United States.

Mr. Gonzalez-Dominguez has not since been threatened. In either 2008 or 2009, a Salvadoran police chief texted him a copy of a letter confirming his official termination from the national police force.

## B.    The IJ's Decision

The IJ's decision began by addressing a procedural issue *sua sponte*. Specifically, the IJ noted that, "[i]n retrospect, the [NTA] was defective" because it did not include "the date and time of the first hearing." R. at 99; *cf. Pereira v. Sessions*, 138 S. Ct. 2105, 2109–10 (2018) (holding that an NTA without time or place information fails to trigger the "stop-time rule," meaning the noncitizen continues to accrue continuous physical presence for purposes of cancellation of removal). The IJ relied on agency precedent, however, holding that such an NTA can be cured by later service of a hearing notice containing the date and time. Because Mr. Gonzalez-Dominguez received such a notice, and because he conceded proper service of the NTA, the IJ found that removal proceedings had been proper.

As to the substantive claims at issue, the IJ found that Mr. Gonzalez-Dominguez failed to show:

- the threats he received in 2004 and 2005 amounted to persecution; and

- a likelihood of persecution upon return to El Salvador, because his evidence did not show that gang members target former police officers.

The IJ therefore denied withholding of removal.

4

As for CAT protection, the IJ held that Mr. Gonzalez-Dominguez failed to show the Salvadoran government would acquiesce in torture committed by gang members, should he return to El Salvador. The IJ therefore denied CAT protection and ordered Mr. Gonzalez-Dominguez returned to his home country.

### C.    The BIA's Decision

On appeal to the BIA, Mr. Gonzalez-Dominguez argued that the NTA defect deprived the immigration court of jurisdiction, so the IJ should have dismissed his removal proceedings. He also challenged the IJ's denial of his withholding and CAT claims.

The BIA summarily affirmed, adopting the IJ's reasoning on all contested issues. This petition for review timely followed.

### III.    ANALYSIS

### A.    The Agency's Jurisdiction

Mr. Gonzalez-Dominguez renews his argument that his defective NTA failed to confer jurisdiction on the agency to order his removal. This court held after *Pereira*, however, "that the requirements relating to notices to appear are non-jurisdictional, claim-processing rules." *Martinez-Perez v. Barr*, 947 F.3d 1273, 1278 (10th Cir. 2020). "We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993).

Mr. Gonzalez-Dominguez does not specifically argue that the Supreme Court has since handed down a superseding contrary decision, but he frequently cites

*Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). *Niz-Chavez* was "the next chapter in the [*Pereira*] story." *Id.* at 1479. It examined whether the government could avoid the stop-time problem highlighted in *Pereira* by later serving a document containing the time and place of the hearing. *See id.* Its answer was "no." *See id.* at 1486.

By relying on *Niz-Chavez*, Mr. Gonzalez-Dominguez may mean to say that, just as a defective NTA plus a later curative document does not trigger the stop-time rule, a defective NTA plus a later curative document does not confer jurisdiction on the immigration courts. If this is his argument, we disagree. Nothing in *Pereira* or *Niz-Chavez* suggests the agency's jurisdiction—its "power or authority to hear and decide," *Atlas Life Ins. Co. v. W. I. S., Inc.*, 306 U.S. 563, 568 (1939)—turns on the technical perfection of the original NTA. Thus, we follow our holding in *Martinez-Perez*, 947 F.3d at 1278, that the date and time requirements are not jurisdictional, and we conclude the agency retained jurisdiction to order Mr. Gonzalez-Dominguez's removal.

### B.     Claim-Processing Objection to the Defective NTA

Mr. Gonzalez-Dominguez argues, at a minimum, the technical NTA requirements are at least claim-processing rules, and the agency should have dismissed the proceeding because the government failed to follow those rules. We agree they are claim-processing rules, as we held in *Martinez-Perez*. But the government objects that Mr. Gonzalez-Dominguez did not raise this argument before the agency. We likewise cannot find any place in the record where Mr. Gonzalez-Dominguez raised the claim-processing issue. Rather, he argued to the

6

BIA (although not to the IJ) that the defective NTA stripped the agency of jurisdiction.[2]

This court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). Mr. Gonzalez-Dominguez did not exhaust his claim-processing argument before the agency. And, to be clear, exhausting a jurisdictional argument is not the same as exhausting a claim-processing argument. For example, in contrast to jurisdictional rules, claim-processing rules "must be timely raised to come into play." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846, 1849 (2019). Thus, Mr. Gonzalez-Dominguez did not give the agency an opportunity to adjudicate at least one important question, specifically, the timeliness of his claim-processing objection in his circumstances (*i.e.*, he was served with the NTA in 2011, conceded proper service in 2012, and never raised any objection to the NTA, jurisdictional or otherwise, until his BIA brief, which he filed in August 2020). *See Schreiber v. Cuccinelli*, 981 F.3d 766, 787 (10th Cir. 2020) (discussing "the fundamental principle of administrative law that instructs courts not to usurp the agency's function by setting aside the administrative determination upon a ground not theretofore presented and depriving the agency of an opportunity to consider the matter, make its ruling, and state the reasons for its action" (internal quotation marks and brackets omitted)); *Vicente-Elias*

---

[2] He also argued that the defective NTA violated his due process rights, but he has not reasserted that argument here.

*v. Mukasey*, 532 F.3d 1086, 1094 (10th Cir. 2008) ("[O]bjections to procedural errors or defects that the BIA could have remedied must be exhausted . . . .").

For these reasons, we are precluded from reaching his claim-processing argument.

### C.    Withholding of Removal

"[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of," among other things, "membership in a particular social group." 8 U.S.C. § 1231(b)(3)(A).  A withholding applicant has the burden of proving a threat to life or freedom in the country of removal, either by proving past threats (in which case the burden shifts to the government to show no current likelihood of threats, or an ability to avoid them through relocation), or by proving a likelihood of future threats.  *See* 8 C.F.R. § 1208.16(b)(1)–(2).

Mr. Gonzalez-Dominguez claimed he would be threatened because he is a member of a particular social group comprising former Salvadoran national police officers.  So defined, he could not carry his burden with the threats he received in 2004 and 2005 because the gangs were threatening him based on his status as a *current* police officer.[3]  Instead, his case necessarily turned on proving a likelihood of future threats based on his previous police service.  The IJ found Mr. Gonzalez-

---

[3] The IJ nonetheless ruled the threats did not qualify as the kind that could support withholding of removal.  Mr. Gonzalez-Dominguez's petition for review does not challenge this finding.

Dominguez had not carried this burden because his evidence almost entirely showed that Salvadoran gangs target current police officers, not former ones.

Mr. Gonzalez-Dominguez claims this was error, but we see no basis to overturn the agency's conclusion.[4]  Rather, the IJ was correct that almost all of the evidence points to threats against, and murders of, current police officers. Mr. Gonzalez-Dominguez says he "submitted significant country conditions evidence that speaks to the gangs' targeting of current and former police officers," and he follows that assertion with a string cite to numerous documents in the record.  Pet'r Opening Br. at 37–38.  We have reviewed each of the cited documents and not one of them discusses threats against *former* police officers.  His characterization to the contrary is simply incorrect.

We have found only four items of evidence supporting Mr. Gonzalez-Dominguez's claim:

- At the withholding/CAT hearing, Mr. Gonzalez-Dominguez was asked, "So, 13 years have passed since you left El Salvador.  Why would these people continue to be a threat to you?"  R. at 182.  He answered, "[B]ecause I think[,] because what they wanted to do was kill me and my family and I never said okay, I'll quit the police."  *Id.*

---

[4] The government argues Mr. Gonzalez-Dominguez waived this issue because his opening brief fails to specifically and adequately challenge the agency's finding. The government is mistaken.  Mr. Gonzalez-Dominguez devoted four pages to this argument.  *See* Pet'r Opening Br. at 36–39.

- A Salvadoran attorney who knew Mr. Gonzalez-Dominguez when he was a police officer submitted an affidavit.  The attorney stated (according to the official translation), "[R]eturning to [E]l Salvador would be of great risk to him and his family since the [gang activity] has rise[n] and for the conditions for which he had to leave the country it is a major risk for him to return to the country."  R. at 285.

- A second Salvadoran attorney who knew Mr. Gonzalez-Dominguez submitted an affidavit.  He asserted, "[R]eturning to [E]l Salvador would be of great risk to [Mr. Gonzalez-Dominguez] and his family."  R. at 301.

- A Salvadoran police officer who worked with Mr. Gonzalez-Dominguez submitted an affidavit.  He stated, "[I]f [Mr. Gonzalez-Dominguez] were to return to the country it would put him and his family in great denager [sic]."  R. at 294.

"Under the substantial-evidence standard our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Niang*, 422 F.3d at 1196 (internal quotation marks omitted).  The agency had substantial evidence to conclude that, despite these assertions, the record did not support Mr. Gonzalez-Dominguez's claim that his former-officer status puts him at risk if he returns to his country.  As the IJ pointed out: (i) Mr. Gonzalez-Dominguez took the step the gangs wanted him to take, namely, he left the police force; (ii) thirteen years had passed (as of the IJ's decision)

since his last threat; and (iii) his documentary evidence about threats to police officers relates to current officers, not former ones. *See* R. at 108–10. We therefore cannot say the evidence "compel[s]" any "reasonable adjudicator . . . to conclude" that Salvadoran gangs target former police officers. 8 U.S.C. § 1252(b)(4)(B). In consequence, we will not disturb the agency's denial of withholding of removal.

### D.    CAT Protection

Mr. Gonzalez-Dominguez's CAT claim is based on the same premise as his withholding claim. Thus, his failure to show a likelihood of being targeted as a former police officer would seem to doom his CAT claim also. But the agency never said as much, and we "may not uphold an agency action on grounds not relied on by the agency," *Mickeviciute v. INS*, 327 F.3d 1159, 1163 (10th Cir. 2003) (internal quotation marks omitted). We therefore focus on the reasoning actually given.

The parties' CAT dispute centers around the concept of government acquiescence to torture. *See* 8 C.F.R. § 1208.18(a)(1) (requiring the torture in question to be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official acting in an official capacity or other person acting in an official capacity"). Mr. Gonzalez-Dominguez argued before the agency, and continues to argue here, that his supervisors' failure to take action after he reported the gang's threats, combined with the *reason* they failed to act (lack of resources), is enough to show willful blindness (which is a form of acquiescence, *see Karki v. Holder*, 715 F.3d 792, 806 (10th Cir. 2013)). The IJ interpreted the evidence to show

11

that Mr. Gonzalez-Dominguez's superiors told him they could do nothing due to lack of resources, but the IJ found this was not enough to establish willful blindness.[5]

Mr. Gonzalez-Dominguez asks us to overturn that finding, but our limited standard of review does not permit us to do so. As the BIA recognized, the Salvadoran government's general inability to control the gangs is not the same as a likelihood of acquiescing to torture of Mr. Gonzalez-Dominguez, should he return. *See* R. at 4 ("We do not disturb the Immigration Judge's determination that police were frustrated by a lack of resources to fully combat El Salvador's gang problem, but would not acquiesce to any future torture." (citation omitted)). From our perspective, we cannot say Mr. Gonzalez-Dominguez's evidence about the government's lack of resources to investigate gang threats compels a conclusion that the Salvadoran government would acquiesce to whatever the gangs might do to him upon his return. *See* 8 U.S.C. § 1252(b)(4)(B). We accordingly reject his CAT argument.

---

[5] The IJ appears to have misremembered Mr. Gonzalez-Dominguez's testimony about his reports to his superiors. Mr. Gonzalez-Dominguez did not say his superiors told him they could do nothing due to lack of resources. He said his superiors told him to be careful, and they otherwise did nothing. He then offered his own opinion that his country lacks the resources to investigate gang threats. The IJ, however, described the testimony as follows: "[W]hen he reported the first threat he received he was told by his commanding officers that they were unable to do anything in response to such a threat based on resource issues." R. at 129. Mr. Gonzalez-Dominguez and the government have both accepted this characterization of the testimony in their subsequent briefing. Thus, because no one challenges it, we treat it as a settled factual finding.

## IV.    CONCLUSION

We deny the petition for review.

Entered for the Court

Veronica S. Rossman
Circuit Judge